**IN THE UNITED STATES DISTRICT COURT IN THE
EASTERN DISTRICT OF VIRGINIA RICHMOND DIVISION**

| | |
|---|---|
| **VIOLET A. SMITH as Administrator of the ESTATE of SABIN MARCUS JONES, deceased,**<br><br>**Plaintiff,**<br>**v.**<br><br>**TOWN OF SOUTH HILL, et al.,**<br><br>**Defendants.** | CIVIL ACTION NO.: 3:19cv00046 |

**AMENDED COMPLAINT**

Plaintiff, Violet A. Smith, as Administrator of the Estate of Sabin Marcus Jones, deceased (hereinafter "Marcus Jones"), by and through her undersigned counsel, complains and requests relief against the Town of South Hill, the South Hill Police Department, Chief of Police, Stuart Bowen, Mecklenburg County Sheriff R.W. "Bobby" Hawkins, Jr., Officer M. Waters, Officer Chris Parrott, Investigator B.J. Mull, Sergeant Scott Zincone, the Mecklenburg County Sheriff's Department, Deputy Cumbia, Major Terry Edmonds, Deputy Troy Walker and Deputy Bruce King and twenty (20) unidentified police officers identified herein as John and Jane Doe Police Officers 1 through 20, and in support thereof Plaintiff avers as follows:

**PRELIMINARY STATEMENT**

1.      On January 11, 2016, in *Armstrong v. The Village of Pinehurst*, the United States Court of Appeals for the Fourth Circuit announced a bright line rule that police officers use unreasonably excessive force in violation of the United States Constitution when "during the course of seizing an outnumbered mentally ill individual who is a danger only to himself, police officers choose to deploy a taser in the face of stationary and non-violent resistance to being handcuffed."

2.     The Fourth Circuit announced that law enforcement officers "should now be on notice" that such conduct violates the Fourth Amendment.

3.     The Fourth Circuit's holding in *Armstrong* is the law in the Commonwealth of Virginia and the Town of South Hill and the Mecklenburg County Sheriff's Department are required to follow it.

4.     It is not optional.

5.     Slightly more than one year later, on January 20, 2017, law enforcement officers from the Town of South Hill and the Mecklenburg County Sheriff's Department obliterated the bright line the Fourth Circuit established in *Armstrong* when they tased to death Sabin Marcus Jones ("Marcus") in a convenience store parking lot.

6.     Police officers from South Hill and the Mecklenburg County Sheriff's Department surrounded Marcus with their police cruisers while he sat inside his car.

7.     Marcus was unarmed, not on the influence of any drugs or alcohol, and not a threat to anyone when the officers descended upon him.

8.     The officers knew that Marcus was mentally ill when they smashed his window and dragged him from his vehicle.

9.     The officers threw Marcus to the ground and laid on him.

10.    In violation of the dictates of the Fourth Circuit, the officers then tased him repeatedly.

11.    The probes from the officers' taser weapons made full contact with Marcus resulting in four "encrusted lesions" in his right and left chest.

12.    The officers then pumped the area around Marcus' heart with a deadly amount of voltage.

2

13.     An eyewitness begged the officers to "get off" Marcus because "he can't breathe."

14.     Throughout this horrific episode, no officers from South Hill and the Mecklenburg County Sheriff's Department attempted to halt the unconstitutional mistreatment of Marcus.

15.     Between violently pulling him from the car, throwing him on the ground, and laying on top of him, the officers broke one of Marcus' ribs.

16.     The eyewitness then saw the officers place a cloth in Marcus' mouth.

17.     Marcus began to have a seizure.

18.     During this shocking, violent and unconstitutional seizure, Marcus became unresponsive.

19.     He was transferred to a local hospital and suffered cardiac arrest.

20.     Four days later, Marcus died.

21.     The Medical Examiner concluded that the use of the "conducted electrical weapon" caused his death.

22.     Though this case is a virtual facsimile to the facts in *Armstrong*, the police misconduct and constitutional violations here are worse.

23.     Defendants in this case had the benefit of the Fourth Circuit's pronouncements and they tased an unarmed mentally ill, stationary and outnumbered man anyway.

24.     As the Fourth Circuit had held, South Hill Police and the Mecklenburg County Sheriff were "on notice."

25.     Like the victim in *Armstrong*, Jones was unarmed, outnumbered, mentally ill and stationary when Defendants illegally deployed their taser weapons in violation of federal law.

3

26.     Predictably, however, the Commonwealth's Attorney investigating this tragedy found nothing wrong with the officers' actions.

27.     Had the officers followed the law and heeded the Fourth Circuit's dictates in *Armstrong*, Marcus would be alive.

28.     This is a case seeking damages from the Town of South Hill, the South Hill Police Department, Stuart Bowen, Chief of Police, Mecklenburg County Sheriff R.W. "Bobby" Hawkins, Jr., Officer M. Waters, Officer Chris Parrott, Investigator B.J. Mull, Sergeant Scott Zincone, the Mecklenburg County Sheriff's Department, Deputy Cumbia, Major Terry Edmonds, Deputy Troy Walker and Deputy Bruce King and unidentified police officers (the "Defendants") who were acting under the color of state law pursuant to 42 U.S.C. § 1983 when they needlessly disregarded the safety and welfare of Marcus Jones resulting in his death.

29.     Marcus Jones suffered cardiac arrest and death in violation of his rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

30.     The Defendants and their agents and employees' deliberate indifference to the health, welfare and safety of Marcus Jones constitutes a serious deprivation of his constitutional rights.

31.     Though Defendants were aware that Marcus had not committed any crime and was in need of medical/ psychiatric treatment, Defendants instead unnecessarily and wantonly inflicted pain on Marcus Jones and knowingly and willingly disregarded an objectively intolerable risk of harm.

32.     The Defendants' misconduct, done under the color of state law, as described below, was recklessly and deliberately indifferent to the life, safety, bodily integrity, well-being, liberty and civil rights of Marcus Jones.

33.     The Defendants' callous disregard for an unarmed man, with a history of mental illness, by breaking his car window, dragging him from it, "tasing" him multiple times, breaking one of his ribs violated his constitutional rights as clearly defined in *Armstrong* and constituted a deprivation of his substantive and procedural due process rights guaranteed by the Fourth and Fourteenth Amendments, and as remediable pursuant to 42 U.S.C. §1983.

34.     The Defendants' actions were so egregious as to shock the conscience and were committed in conscious disregard of the substantial and/or unjustifiable risk of causing harm to Marcus Jones.

35.     Plaintiff, Violet A. Smith, as Administrator of the Estate of Sabin Marcus Jones, deceased, seeks damages from the Defendants and their agents/employees pursuant to 42 U.S.C. § 1983 for their disregard of Marcus Jones' health, welfare, and safety guaranteed by the United States Constitution.

36.     This is a civil rights action for money damages brought under 42 U.S.C. §§ 1983, 1985 the Fourth and Fourteenth Amendments to the United States Constitution and raising supplemental state law claims concerning the actions of the Town of South Hill, the South Hill Police Department, Chief of Police, Stuart Bowen, Officer M. Waters, Officer Chris Parrott, Investigator B.J. Mull, Sergeant Scott Zincone, the Mecklenburg County Sheriff R.W. "Bobby" Hawkins, Jr., Deputy Cumbia, Major Terry Edmonds, Deputy Troy Walker and Deputy Bruce King and twenty (20) unidentified police officers identified herein as John and Jane Does 1 through 20 (whose identities are currently known by Defendants but unknown by Plaintiff) in their individual and official capacities as police officers, in unlawfully arresting, maliciously prosecuting, and using excessive, unreasonable, and deadly force against Marcus Jones.

37.     John and Jane Doe Police Officers 1 through 20 unlawfully seized Marcus Jones and used excessive, unreasonable and deadly force against him.

38.     John and Jane Doe Police Officers 1 through 20 unlawfully and unconstitutionally tased and electrocuted Marcus Jones with their TASER weapons on multiple occasions in front of a convenience store.

39.     John and Jane Doe Police Officers 1 through 20 unlawfully, intentionally and maliciously denied him medical attention despite actual and/or constructive knowledge that Marcus Jones required immediate medical attention after being injured by Defendants' TASER weapons.

40.     The actions and conduct of John and Jane Doe Police Officers 1 through 20 are the result of the policies, practices, inadequate training about current federal civil rights law and/or deliberate indifference on the part of Defendants the Town of South Hill, South Hill Police Department, Chief of Police, Stuart Bowen, Officer M. Waters, Officer Chris Parrott, Investigator B.J. Mull, Sergeant Scott Zincone, the Mecklenburg County Sheriff, Deputy Cumbia, Major Terry Edmonds, Deputy Troy Walker and Deputy Bruce King to the civil rights of citizens of Virginia, including Marcus Jones.

41.     The Town of South Hill, the South Hill Police Department, the Virginia State Police, Chief of Police, Stuart Bowen, John and Jane Doe Police Officers 1 through 20 violated federal law, including the United States Constitution because Defendants, individually and/or collectively were on notice of a consensus of other cases involving hundreds of deaths caused in the United States of America by the unlawful, excessive, and gratuitous use of TASER weapons by police officers, particularly *Armstrong v. The Village of Pinehurst*.

42.     The instant action is brought against all Defendants identified herein for committing acts under color of law which deprived Marcus Jones of rights secured under the Constitution and laws of the United States and the laws of the Commonwealth of Virginia.

## STATEMENT OF JURISDICTION

43.     The Court has federal subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims under 42 U.S.C. §§ 1983 and 1985 and arise under the laws of the United States.

44.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's additional claims under state law because Plaintiff's state law claims relate to Plaintiff's federal law claims, arise out of a common nucleus of operative facts, and form part of the same case.

45.     Venue is proper in the Richmond Division of the Eastern District of Virginia because Plaintiff's claims arise primarily from unlawful conduct occurring in South Hill, Mecklenburg County, Virginia.

## PARTIES

46.     Plaintiff, Violet A. Smith, is an adult individual residing at 1537 Clover Road, Apt. #1, Lacrosse, VA 23950.

47.     Plaintiff is the mother of Plaintiff's decedent, Sabin Marcus Jones.

48.     Marcus Jones was born on June 26, 1972 and died on January 24, 2017.

49.     Violet A. Smith was appointed Administrator of the Estate of Marcus Sabin Jones by the Clerk's Office for the Circuit Court of Mecklenburg County under Va. Code § 8.01-50 on April 3, 2017. *See* Exhibit A.

50.     Ms. Smith has standing to bring the instant action on behalf of the Estate of Marcus Sabin Jones.

51.     Defendants, Chief of Police, Stuart Bowen, Officer M. Waters, Officer Chris Parrott, Investigator B.J. Mull, Sergeant Scott Zincone, Deputy Cumbia, Major Terry Edmonds, Deputy Troy Walker and Deputy Bruce King, John and Jane Doe Police Officers 1 through 20 were at all times relevant to this complaint, duly appointed and acting as officers of the South Hill Police Department and/or the Mecklenburg County Sheriff's Department, acting under the color of law and under the statutes, ordinances, regulations, policies, customs and usages of the Commonwealth of Virginia, Town of South Hill and/or Mecklenburg County.

52.     Plaintiff brings suit against Chief of Police, Stuart Bowen, Mecklenburg County Sheriff R.W. "Bobby" Hawkins, Jr., Officer M. Waters, Officer Chris Parrott, Investigator B.J. Mull, Sergeant Scott Zincone, Deputy Cumbia, Major Terry Edmonds, Deputy Troy Walker and Deputy Bruce King John and Jane Doe Police Officers 1 through 20 in their individual and official capacities.

53.     At all times relevant hereto, Defendants, Chief of Police, Stuart Bowen, Mecklenburg County Sheriff R.W. "Bobby" Hawkins, Jr., Officer M. Waters, Officer Chris Parrott, Investigator B.J. Mull, Sergeant Scott Zincone, Deputy Cumbia, Major Terry Edmonds, Deputy Troy Walker and Deputy Bruce King John and Jane Doe Police Officers 1 through 20 were acting within the course and scope of their employment with the South Hill Police Department and/or the Mecklenburg County.

54.     At all times relevant hereto, Chief of Police, Stuart Bowen had responsibility over the policies, procedures, practices, and training of the police officers under the employ of the South Hill Police Department, including John and Jane Doe Police Officers 1 through 20.

8

55.     At all times relevant hereto, Chief of Police, Stuart Bowen was responsible for the day to day operation of the South Hill Police Department, including the hiring, supervising, retaining, disciplining, and terminating police officers under the employ of the South Hill Police Department, including John and Jane Doe Police Officers 1 through 20.

56.     At all times relevant hereto, Mecklenburg County Sheriff R.W. "Bobby" Hawkins, Jr. had responsibility over the policies, procedures, practices, and training of the police officers under the employ of the Mecklenburg County Sheriff's Department, including John and Jane Doe Police Officers 1 through 20.

57.     At all times relevant hereto, Mecklenburg County Sheriff R.W. "Bobby" Hawkins, Jr. was responsible for the day to day operation of the Mecklenburg County Sheriff's Department, including the hiring, supervising, training, retaining, disciplining, and terminating police officers under the employ of the Mecklenburg County Sheriff's Department, including John and Jane Doe Police Officers 1 through 20.

58.     At all times relevant hereto, the unconstitutional acts of John and Jane Doe Police Officers 1 through 20 were the result of the policies, practices, inadequate training, unfamiliarity with current civil rights laws affecting the Commonwealth of Virginia and/or procedures of the South Hill Police Department, the Town of South Hill and the Mecklenburg County Sheriff's Department were implemented, overseen, approved, ratified, and/or controlled by Chief of Police, Stuart Bowen and/or the principals of the Mecklenburg County Sheriff's Department.

59.     The Town of South Hill is a local governing body that operates, manages, controls, and/or is otherwise responsible for the South Hill Police Department, including the employment, supervision, training and retention of John and Jane Doe Police Officers 1 through 20. It is believed and therefore averred that the South Hill Police Department is sui generis with

the Town of South Hill.  The Town of South Hill operates through its unincorporated subdivision, the South Hill Police Department. The Town of South Hill acts through its agents and employees within the South Hill Police Department acting in their individual and official capacities.

60.     The Mecklenburg County Sheriff's Department is a law enforcement arm of the Mecklenburg County Virginia and it directs, controls, manages, employs and/or is otherwise responsible for the officers involved in the interaction with Marcus Jones on January 20, 2017, including the employment, supervision, training and retention of John and Jane Doe Police Officers 1 through 20.

61.     Defendant the Town of South Hill fully funds and maintains the South Hill Police Department which operates under and administers a set of law enforcement policies, practices, and customs involving the hiring, training, supervision, retention, and termination of its officers, employees, agents, servants, and ostensible agents, including but not limited to Chief of Police, Stuart Bowen, Officer M. Waters, Officer Chris Parrott, Investigator B.J. Mull, Sergeant Scott Zincone and John and Jane Doe Police Officers 1 through 20. It is believed and therefore averred that the Mecklenburg County Sheriff's Department is sui generis with Mecklenburg County

62.     Mecklenburg County fully funds and maintains the Mecklenburg County Sheriff's Department which operates under and administers a set of law enforcement policies, practices, and customs involving the hiring, training, supervision, retention, and termination of its officers, employees, agents, servants, and ostensible agents, including but not limited to John and Jane Doe Police Officers 1 through 20.

63.     Defendants Town of South Hill, South Hill Police Department and the Mecklenburg County Sheriff's policies, practices, and customs include training in the use of

force, on-the-street encounters with civilians, interactions with mentally disturbed citizens, TASER training, TASER re-certification, firearm training, community policing, defensive tactics, drug enforcement, officer survival, and medical training.

64.     Defendants Town of South Hill, South Hill Police Department and the Mecklenburg County Sheriff's Department created, implemented, drafted, revised, ratified and/or approved these policies, procedures, practices, and protocols include written directives.

65.     The Town of South Hill, South Hill Police Department and the Mecklenburg County Sheriff's Department are being sued for their civil rights violations, their own tortious acts and/or omissions and under the theory of respondeat superior. They are vicariously liable for the unconstitutional acts and omissions set forth herein.

## THE FACTS

66.     TASER weapons have been responsible for hundreds of deaths when used by law enforcement.

67.     Defendants, individually and/or collectively, knew or should have known that TASER weapons have the unique potential to be excessively used against citizens during the course of law enforcement activities.

68.     TASER weapons can administer an uninterrupted shock of 50,000 volts.

69.     TASER weapons are designed to override the subject's central nervous system, causing uncontrollable muscle contraction of muscle tissue and instant collapse.

70.     TASER weapons are known to cause serious injury and/or death.

71.     Individuals that are under the influence of alcohol or drugs, exhausted, and/or overexerted are more likely to suffer serious injury and/or death when shot by a TASER weapon.

72.     Application of TASER weapons can result in serious injury and death, including cardiac arrest, ventricular fibrillation, and a decrease in respiration.

73.     Prior to January 20, 2017, Defendants, individually and/or collectively, knew or should have known about the risk of serious harm or death caused by the use of TASER weapons.

74.     In fact, on January 11, 2016, in *Armstrong v. The Village of Pinehurst,* the United States Court of Appeals provided the framework on how law enforcement officers must treat an unarmed, mentally ill citizen who has committed no crime when executing an involuntary commitment order.

75.     The Fourth Circuit address the question of the use of force on the mentally ill:

> Mental illness, of course, describes a broad spectrum of conditions and does not dictate the same police response in all situations. But "in some circumstances at least," it means that "increasing the use of force may . . . exacerbate the situation." *Deorle* [*v. Rutherford*,] 272 F.3d at 1283. Accordingly, "the use of officers and others trained in the art of counseling is ordinarily advisable, where feasible, and may provide the best means of ending a crisis." *Id.* And even when this ideal course is not feasible, officers who encounter an unarmed and minimally threatening individual who is "exhibit[ing] conspicuous signs that he [i]s mentally unstable" must "de-escalate the situation and adjust the application of force downward."

(citing *Martin v. City of Broadview Heights*, 712 F.3d 951, 962 (6th Cir. 2013)).

76.     The Fourth Circuit based its findings on a similar decision from the United States Court of Appeals for the Ninth Circuit and determined:

> "[T]he use of force that may be justified by" the government's interest in seizing a mentally ill person, therefore, "differs both in degree and in kind from the use of force that would be justified against a person who has committed a crime or who poses a threat to the community."

(citing *Bryan v. MacPherson*, 630 F.3d 805, 829 (9th Cir. 2010) (alteration omitted) (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1282-83 (9th Cir. 2001)).

77. The Fourth Circuit promulgated the following finding:

> Where a seizure's sole justification is preventing harm to the subject of the seizure, the government has little interest in using force to effect that seizure. Rather, using force likely to harm the subject is manifestly contrary to the government's interest in initiating that seizure. *See Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1059 (9th Cir. 2003) (When "a mentally disturbed individual not wanted for any crime . . . [i]s being taken into custody to prevent injury to himself[,] [d]irectly causing [that individual] grievous injury does not serve th[e officers'] objective in any respect.").

78. In *Armstrong*, the Fourth Circuit described the victim and provided a clear warning to the Defendants:

> When Appellees decided to begin using force, Armstrong, who stood 5'11" tall and weighed 262 pounds, was stationary, seated, clinging to a post, and refusing to move. He was also outnumbered and surrounded by police officers and security guards. **The degree of force necessary to prevent an individual who is affirmatively refusing to move from fleeing is obviously quite limited.** (emphasis added).

79. On December 29, 2016, Marcus Jones had been admitted to the Virginia Beach Psychiatric Center.

80. On January 6, 2017, he was discharged.

81. On January 20, 2017, Marcus' aunt Sheila Holmes had determined her nephew had not been taking his prescribed medications and at 10:50 am went to the South Hill Police Department to request that they place him in custody under an Emergency Custody Order.

82. Marcus' mental status and mental illness had been long known to the South Hill Police.

83. The South Hill Police went to pick up Marcus at his house on 3509 Chaptico Road, South Hill, VA but he was not there.

84. At 2:00 pm, Sheila Holmes found her nephew parked at the EZ Convenient Stop store in South Hill and called the police.

13

pageid# 409

85.     At 2:15, eight police officers from the South Hill Police Department and the Mecklenburg County Sheriff's Office found Marcus still in his parked car at the EZ Convenient Stop.

86.     They walked up to the car and Marcus turned his car on to drive away.

87.     Two officers blocked his vehicle with their cruisers.

88.     Two South Hill officers instructed Marcus to get out of the car but he refused.

89.     Like the victim in *Armstrong v. The Village of Pinehurst*, Marcus was stationary and completely outnumbered by the police.

90.     Marcus was unarmed and contained within his vehicle and posed no danger to the officers who outnumbered him.

91.     Under those circumstances, the Fourth Circuit instructs the South Hill Police Department and the Mecklenburg County Sheriff's Department that, "The degree of force necessary to prevent an individual who is affirmatively refusing to move from fleeing is **obviously quite limited**."

92.     Despite knowing that Marcus was mentally ill, and the clear limitations set forth by the Fourth Circuit prohibiting an escalation of force, an officer then broke the driver's side window.

93.     Marcus then moved to the passenger side of the vehicle.

94.     A second officer then broke the passenger side window and opened the door and removed him from the vehicle.

95.     Officers had removed their guns and Marcus' Aunt Sheila Holmes hollered at them, "Don't shoot him!  He's off his medication and you guys know his situation."

96.     Then the officers put their guns away and took out their tasers.

97.     The officers attempted to get Marcus on the ground and they tased him multiple times.

98.     Officer Waters deployed his taser and struck Jones in the chest.

99.     No one from the South Hill Police Department or the Mecklenburg County Sheriff's Department stopped the unconstitutional violent mistreatment and taser use on an unarmed, outnumbered and mentally ill man.

100.    Sheila Holmes observed Marcus' eyeballs rolling into the back of his head.

101.    The officers continued to tase him as he was pinned to the pavement.

102.    While Marcus was laying on the ground, a police officer retrieved a rag from his vehicle and placed in his mouth.

103.    As Marcus groaned, an officer yelled, "Do you want to do this?"

104.    While on the ground, Marcus became non-responsive.

105.    The officers then put Marcus' unresponsive body into the back of a police van and took him to the hospital.

106.    Major Edwards called Sheila Holmes three times and told her to meet her at the hospital.

107.    There, he advised that Marcus had died on the way to the hospital.

108.    Marcus was transferred to VCU-MCU Hospital in Richmond.

109.    He was placed on a ventilator for 5 days and ultimately died on January 24, 2017.

110.    Pathologist Michael Hays, M.D., medical examiner for Mecklenburg County, performed an autopsy and found:

> A 2 inch healing linear abrasion is present on the left side of the chest. Present on the right of the chest is a pair of crusted puncture lesions measuring 1/16 inch each and spaced 1 1/4 inches apart. Present on the left lateral aspect of the chest is a pair of crusted lesions ranging from 3/6 to 3/8 inch in diameter. The lower

lesion displays a 1/16 inch central puncture. The lesions are spaced 1 1/4 inches apart.

111.    Dr. Hays listed the pathological diagnoses and cause of death as, "Complications of anoxic brain injury due to excited delirium syndrome associated with schizophrenia, physical exertion and **conducted electrical weapon use**." (emphasis added).

112.    The Virginia State Police conducted an investigation and issued the following statement:

> At approximately 2:40 p.m. Friday, the Mecklenburg County Sheriff's Office was following up on an Emergency Custody Order (ECO) requested by a family member for Sabin M. Jones, 44, of South Hill, Va. A family member advised the deputies that Jones was at a convenience store/gas station in the 800 block of North Mecklenburg Avenue in the town of South Hill.
> The deputies located Jones inside a late-model Chevrolet Camaro at the convenience store/gas station. When the deputies approached him to serve the ECO, he refused to exit his vehicle. He backed into one of the deputies' vehicles and then began driving forward, at which time additional deputies, with the assistance of South Hill Police, were able to block the Camaro from leaving the parking lot.
> Despite the deputies' and officers' repeated attempts to talk to Jones and have him exit his locked vehicle, he refused and became increasingly agitated. To prevent Jones from harming himself inside the vehicle, a deputy broke open one of the vehicle's windows and negotiations continued with Jones in an attempt to calm him down and get him to safely exit the Camaro. When Jones began kicking and punching the inside of the Camaro, a deputy broke open a second window on the car. Jones then exited the vehicle in an aggressive manner towards the deputies and officers. As the deputies and officers attempted to apprehend Jones, he became increasingly combative. One of the South Hill Police Officers deployed his Taser to bring Jones under control. After the deployment, Jones remained non-compliant with the deputies' and officers' commands as they attempted to handcuff him. Jones also began banging his head against the ground.
> Due to Jones' heightened state of agitation and contact with the Taser, he was transported to VCU Health Community Hospital in South Hill. The hospital then transferred Jones to the VCU Medical Center in Richmond, where he passed away Tuesday, Jan. 24, 2017. His remains were transported to the Office of the Chief Medical Examiner in Richmond for autopsy and examination.
> At the request of Mecklenburg County Sheriff R.W. "Bobby" Hawkins Jr. and South Hill Police Chief Stuart Bowen, the Virginia State Police is investigating the incident. The investigation remains ongoing at this time.

113.    The Virginia State Police's press release confirms several constitutional violations.

114.    As set forth in *Armstrong v. The Village of Pinehurst*, the "sole justification" of the Defendants' seizure of Marcus Jones was "preventing harm" to Marcus Jones.

115.    In violation of the Fourth Circuit's dictates the Defendants failed to "de-escalate the situation and adjust the application of force downward."

116.     The Defendants did not do that.

117.    To the contrary, the Virginia State Police found, "a deputy broke open one of the vehicle's windows" in order to "prevent Jones from harming himself inside the vehicle."

118.    This finding stands in direct violation to the dictates of the United States Court of Appeals in *Armstrong v. The Village of Pinehurst*.

119.    As set forth in *Armstrong v. The Village of Pinehurst*, the Fourth Circuit has warned that "the government has little interest in using force to effect that seizure. Rather, using force likely to harm the subject is manifestly contrary to the government's interest in initiating that seizure."

120.    It was well established in January 2017, that a taser may not be deployed "in the face of stationary and non-violent resistance to being handcuffed."

121.    Marcus was confined to the interior of his own vehicle and when he began "kicking and punching the inside of the Camaro."

122.    As a result, no credible, truthful or honest police officer could claim to be physically threatened while standing safely outside his vehicle.

123. Marcus Jones was unarmed and non-threatening at the time members of the South Hill Police Department and the Mecklenburg County Sheriff's Department shattered his two car windows, dragged him from his car, accosted, tased, and gagged him.

124. At the time of the tasings, Marcus Jones was known to the Defendants as being mentally ill, was outnumbered by South Hill Police and Mecklenburg County officers and was "stationary" in his car and after the officers laid on top of him.

125. Members of the South Hill Police Department and the Mecklenburg County Sheriff's Department set into motion events and actions which lead to the death of Marcus Jones.

126. Marcus Jones had not committed any crime and was not engaged in any criminal conduct at the time members of the South Hill Police Department and the Mecklenburg County Sheriff's Department shattered his two car windows, dragged him from his car, accosted, tased, and gagged him.

127. Defendants' actions are unequivocally unconstitutional.

128. Through their refusal to stop the unconstitutional mistreatment of Marcus Jones, Defendants acted in tacit agreement to violate Marcus Jones' rights.

129. In violation of Section 1983 and 1985, Defendants' concerted actions to escalate a confrontation with an outnumbered and mentally ill man constitutes a meeting of the minds in which they agreed to violate Marcus Jones' constitutional rights.

130. Their mistreatment of Marcus Jones evidenced the fact that Defendants reached an understanding to violate Marcus Jones' rights.

131. Members of the South Hill Police Department and the Mecklenburg County Sheriff's Department without justification, under the guise of conducting legitimate police activity on behalf of Defendants the Town of South Hill and the Mecklenburg County Sheriff's

18

Department, and in violation of the Fourth Circuit's dictates in *Armstrong v. The Village of Pinehurst*, and without ever having observed Marcus Jones with a weapon, violently removed him from his car, tased him multiple occasions and/or failed to release the trigger of the subject TASER resulting in continuous electric shock to him.

132.    Members of the South Hill Police Department and the Mecklenburg County Sheriff's Department's use of force was unlawful and unwarranted because Marcus Jones was not fleeing from the commission of the crime or attempting to evade a lawful arrest.

133.    As a result of Defendants' unlawful and unconstitutional acts and/or omissions, Marcus Jones died.

134.    Defendants, Mecklenburg County Sheriff R.W. "Bobby" Hawkins Jr. and South Hill Police Chief Stuart Bowen, the Town of South Hill and the Mecklenburg County Sheriff's Department knew or should have known, that its police officers did not follow the law, refused to follow the Fourth Circuit's dictates in *Armstrong v. The Village of Pinehurst,* and violate the civil rights of persons with improper, gratuitous and excessive use of TASER weapons.

135.    Defendants have failed to take any steps to have its police officers appropriately trained and supervised, including to be knowledgeable of the significance, implications and requirements of Fourth Circuit's dictates in *Armstrong v. The Village of Pinehurst*.

136.    Defendants, Mecklenburg County Sheriff R.W. "Bobby" Hawkins Jr. and South Hill Police Chief Stuart Bowen, the Town of South Hill and the Mecklenburg County Sheriff's Department knew or should have known that their police officers were inadequately and/or inappropriately trained in proper police procedures, relating to interactions with mentally ill citizens and the use of Taser weapons in light of the Fourth Circuit decision in *Armstrong.*

19

137.     Defendants, Mecklenburg County Sheriff R.W. "Bobby" Hawkins Jr. and South Hill Police Chief Stuart Bowen, the Town of South Hill and the Mecklenburg County Sheriff's Department routinely allow law enforcement officers to use TASER weapons without proper training, including training on the Fourth Circuit's holding in *Armstrong v. The Village of Pinehurst.*

138.     Defendants, Mecklenburg County Sheriff R.W. "Bobby" Hawkins Jr. and South Hill Police Chief Stuart Bowen, the Town of South Hill and the Mecklenburg County Sheriff's Department failed to train police officers in procedures concerning multiple tasings of an individual, and the significant risk of cardiovascular injury posed by multiple tasings.

139.     At all times relevant hereto, police and law enforcement officers of the South Hill Police Department and the Mecklenburg County Sheriff's Department were acting under color of law and within the scope of their employment as a duly appointed law enforcement officers of the Town of South Hill and Mecklenburg County.

140.     At all times relevant hereto, Defendants, Mecklenburg County Sheriff R.W. "Bobby" Hawkins Jr. and South Hill Police Chief Stuart Bowen, the Town of South Hill and the Mecklenburg County Sheriff's Department were responsible for the civil rights violations of the law enforcement officers who caused the death of Marcus Jones.

## COUNT I
## DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. §§ 1983, 1985
## AND THE FOURTH AND FOURTEENTH AMENDMENTS
## OF THE UNITED STATES CONSTITUTION

## PLAINTIFF V. ALL DEFENDANTS

141.     Plaintiff incorporates by reference each and every allegation set forth above.

142.    For the reasons set forth herein, Plaintiff alleges that Defendants, intentionally, willfully, recklessly, and/or otherwise deprived Marcus Jones of his civil rights in violation of 42 U.S.C. §§ 1983, 1985 and the United States Constitution.

143.    The unconstitutional actions of Defendants include, but are not limited to, the use of excessive and/or unreasonable force, the deprivation of medical care, the deprivation of Marcus Jones' life and physical liberty.

144.    The South Hill Police Department and the Mecklenburg County Sheriff's Department's policies and procedures led to the officers using excessive and unreasonable force on Marcus Jones in violation of his constitutional rights.

145.    Defendants deprived Marcus Jones of his civil rights and acted in concert to deprive him of his civil rights.

146.    The Defendants had a meeting of the minds and escalated a static situation involving a stationary, unarmed, outnumbered mentally ill man to one where officers violently mistreated him in violation of his constitutional rights.

147.    Defendants knew or should have known that their violent mistreatment of Marcus Jones violated the dictates in *Armstrong v. The Village of Pinehurst;* however, none of the officers involved halted the unconstitutional behavior and excessive force.

148.    The officers involved agreed to this unconstitutional mistreatment of Marcus Jones when *Armstrong v. The Village of Pinehurst* required them to come to his aid to prevent the gratuitous tasings.

149.    They did not.

150.    Defendants' unreasonable seizure of Marcus Jones with the use of a deadly taser weapon occurred without affording him due process of law.

151.    As a direct result of the unlawful and unreasonable constitutional violations committed by Defendants, Marcus Jones lost his life, the ultimate deprivation of his civil liberties.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in the full and fair amount in compensatory and punitive damages, plus attorney's fees, interest and costs.

## COUNT II
## SURVIVAL ACTION

## PLAINTIFF V. ALL DEFENDANTS

152.    Plaintiff incorporates by reference herein each and every allegation set forth above.

153.    Pursuant to Virginia Code § 8.01-25, Plaintiff's decedent, Marcus Jones' right of action and the claims against the Defendants named herein survives in favor of Violet Smith, the legal representative of the deceased.

154.    Plaintiff demands all damages recoverable under the Act, including damages for funeral and medical expenses and conscious pain and suffering as well as any other damages recoverable under the Act.

155.    Plaintiff's is entitled to relief under the Virginia Code § 8.01-25 for the Defendants violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in the full and fair amount in compensatory and punitive damages, plus attorney's fees, interest and costs.

## COUNT III
## WRONGFUL DEATH

## PLAINTIFF V. ALL DEFENDANTS

156.   Plaintiff incorporates by reference herein each and every allegation set forth above.

157.   Pursuant to Virginia Code § 8.01-25, Plaintiff's claims are also actionable under the Virginia Wrongful Death Act.

158.   As a direct, substantial, and proximate result of the tortious acts and/or omissions of Defendants and/or the employees, agents, representatives, who were acting during the course and within the scope of their employment, the Plaintiff and Plaintiff's decedent expended sums of money for medical, hospital and funeral expenses to their great financial loss and detriment.

159.   As a direct, substantial, and proximate result of the tortious acts and/or omissions of Defendants and/or the employees, agents, representatives, who were acting during the course and within the scope of their employment, Plaintiff has suffered sorrow, mental anguish, and solace, including a loss of society, companionship, comfort, guidance and support and has been deprived of Marcus Jones' financial support, the pecuniary value of his services, protection, care and assistance, and will continue to be deprived of decedent's support, earnings and services in the future, all to its great financial loss and detriment.

160.   Plaintiff hereby demands all damages recoverable under the Wrongful Death Statute.

161.   Plaintiff is entitled to relief under the Wrongful Death Statute for the Defendants violations of 42 U.S.C. § 1983 and 42 U.S.C. § 1985.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in the full and fair amount in compensatory and punitive damages, plus attorney's fees, interest and costs.

## COUNT IV
## EXCESSIVE FORCE/POLICE BRUTALITY

### PLAINTIFF V. ALL DEFENDANTS

162.    Plaintiff incorporates by reference each and every allegation set forth above.

163.    At all times relevant hereto, Defendants had an obligation to employ only reasonable measures in their interaction and treatment of Marcus Jones.

164.    Notwithstanding the obligations, Defendants used excessive, unreasonable, and lethal force on Plaintiff's decedent, Marcus Jones.

165.    It is believed, and, therefore, averred that the use of force was not warranted or authorized under the circumstances.

166.    Defendants, Mecklenburg County Sheriff R.W. "Bobby" Hawkins Jr. and South Hill Police Chief Stuart Bowen, the Town of South Hill and the Mecklenburg County Sheriff's Department acting under the color of law, approved, condoned, and/or ratified the actions of police and law enforcement officers, therefore, any and all liability on the part of any of the police and law enforcement officers is imputed to them.

167.    As a direct, substantial and proximate result of the intentional, willful, malicious and/or otherwise tortious conduct of Defendants, Plaintiff's decedent, Marcus Jones suffered serious and permanent injuries that resulted in his death.

168.    As a direct, substantial and proximate result of the intentional, willful, malicious and/or otherwise tortious conduct of Defendants, Marcus Jones was deprived of his civil rights under the Fourth and Fourteenth Amendments to the United States Constitution.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in the full and fair amount in compensatory and punitive damages, plus attorney's fees, interest and costs.

**COUNT V**
**UNCONSTITUTIONAL/INADEQUATE POLICIES,**
**TRAINING, AND PROCEDURES - 42 U.S.C. § 1983**

**PLAINTIFF V. DEFENDANTS, MECKLENBURG COUNTY SHERIFF R.W. "BOBBY"**
**HAWKINS JR., SOUTH HILL POLICE CHIEF STUART BOWEN, THE SOUTH HILL**
**POLICE DEPARTMENT AND THE MECKLENBURG COUNTY SHERIFF'S**
**DEPARTMENT**

169.    Plaintiff incorporates by reference each and every allegation set forth above.

170.    At all times relevant herein, Defendants were acting under the direction and control, and pursuant to the official rules, regulations, policies and procedures of Defendants the Town of South Hill, the South Hill Police Department, South Hill Police Chief Stuart Bowen, Mecklenburg County Sheriff R.W. "Bobby" Hawkins Jr. and the Mecklenburg County Sheriff's Department.

171.    Defendants the Town of South Hill, the South Hill Police Department, South Hill Police Chief Stuart Bowen, Mecklenburg County Sheriff R.W. "Bobby" Hawkins Jr. and the Mecklenburg County Sheriff's Department acted recklessly and with deliberate indifference to the safety of the public at large, including Plaintiff's decedent, Marcus Jones, by failing to properly train, supervise, control, direct, and monitor their police and law enforcement officers.

172.    Defendants acted under the color of official policies, regulations, ordinances, policies and/or procedures which caused South Hill Police Officers and Mecklenburg County Sheriff's Department Officers to violate Marcus Jones' civil rights.

173.    Though the Fourth Circuit dictates in *Armstrong v. The Village of Pinehurst* clearly that established that violent force and taser use were prohibited in situations involving an unarmed, stationary, outnumbered and mentally ill man, the Town of South Hill, the South Hill Police Department, South Hill Police Chief Stuart Bowen, Mecklenburg County Sheriff R.W.

"Bobby" Hawkins Jr. and the Mecklenburg County Sheriff's Department failed to properly train officers under their control and supervision to be familiar with the current status of the law.

174.    The Town of South Hill, the South Hill Police Department, South Hill Police Chief Stuart Bowen, Mecklenburg County Sheriff R.W. "Bobby" Hawkins Jr. and the Mecklenburg County Sheriff's Department failed failure properly train the officers on the meaning, significance and requirements of the Fourth Circuit's *Armstrong* holding constitutes an reckless indifference to the rights of citizens of Virginia, including Marcus Jones.

175.    The enforcement and promulgation of the official policies by South Hill Police Officers and Mecklenburg County Sheriff's Department Officers, which failed to account for well settled federal law, caused the deprivation of Marcus Jones' civil rights.

176.    Following the death of Marcus Jones, it is unknown whether Defendants altered, changed, amended, and/or modified the training administered to South Hill Police Officers and Mecklenburg County Sheriff's Department Officers regarding the use of TASER weapons to conform, comply or adhere to the constitutional dictates of the Fourth Circuit.

177.    Defendants knew or should have known that South Hill Police Officers and Mecklenburg County Sheriff's Department Officers had engaged in unreasonable and unconstitutional police conduct and used inappropriate and/or excessive force during the course of police work.

178.    Defendants knew or should have known that South Hill Police Officers and Mecklenburg County Sheriff's Department Officers engaged in unreasonable police conduct and unconstitutional force, including the use of excessive force and deprivation of medical attention in a pervasive, well-settled and permanent manner so as to constitute the force of law.

179.     Defendants, Town of South Hill, the South Hill Police Department, South Hill Police Chief Stuart Bowen, Mecklenburg County Sheriff R.W. "Bobby" Hawkins Jr. and the Mecklenburg County Sheriff's Department ratified the unconstitutional conduct of South Hill Police Officers and Mecklenburg County Sheriff's Department Officers.

180.     As a direct, substantial and proximate result of the reckless, willful and/or malicious conduct of Town of South Hill, the South Hill Police Department, South Hill Police Chief Stuart Bowen, Mecklenburg County Sheriff R.W. "Bobby" Hawkins Jr., Plaintiff's decedent, Marcus Jones was wrongfully and unlawfully tased on multiple occasions on January 20, 2017.

181.     As a direct, substantial and proximate result of the reckless, willful and/or malicious conduct of Town of South Hill, the South Hill Police Department, South Hill Police Chief Stuart Bowen, Mecklenburg County Sheriff R.W. "Bobby" Hawkins Jr., Plaintiff's decedent, Marcus Jones was wrongfully and unlawfully deprived of his civil rights which were afforded to him under the United States Constitution.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in the full and fair amount in compensatory and punitive damages, plus attorney's fees, interest and costs.

<u>**COUNT VI**</u>
<u>**FALSE ARREST**</u>

<u>**PLAINTIFF V. DEFENDANTS**</u>

182.     Plaintiff incorporates by reference each and every allegation set forth above.

183.     Defendants South Hill Police Officers and Mecklenburg County Sheriff's Department Officers seized Plaintiff's decedent without a warrant and without probable cause.

27

184.   The actions of Defendants South Hill Police Officers and Mecklenburg County Sheriff's Department Officers constitutes an unreasonable seizure prohibited by the Fourth Amendment.

185.   Defendants South Hill Police Officers and Mecklenburg County Sheriff's Department Officers were not permitted to violate Marcus Jones' constitutional rights.

186.   Defendants South Hill Police Officers and Mecklenburg County Sheriff's Department Officers violated Marcus Jones' constitutional rights under the Fourth and Fourteenth Amendment of the United States Constitution by unlawfully depriving him of his physical liberty.

187.   As a direct, substantial, and proximate result of the intentional, reckless, willful and malicious conduct of Defendants South Hill Police Officers and Mecklenburg County Sheriff's Department Officers, Marcus Jones was deprived of his physical liberty in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

188.   As a direct, substantial, and proximate cause of the aforementioned constitutional violations, Marcus Jones died.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in the full and fair amount in compensatory and punitive damages, plus attorney's fees, interest and costs.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that:

1.   This Court grant Plaintiff compensatory damages according to proof.

2.   This Court grant Plaintiff nominal damages.

3.   This Court grant Plaintiff punitive damages.

4. This Court award Plaintiff attorney's fees, costs, and expenses related to this action.

5. This Court grant injunctive relief to correct government procedure to prevent future injury.

6. This Court award Plaintiff all such other relief as the Court deems just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a jury trial.

Respectfully submitted,

/s/ William H. O'Brien
**DOUMMAR & O'BRIEN**
William H. O'Brien
1397 Laskin Road
Virginia Beach, Virginia 23451
happy@doummarandobrien.com
Telephone: (757) 422-0061
Facsimile: (757) 422-5512